IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

In re:                          )
                                )
NADINE EVETTE LANIER,           )    Case No. 19-40185-JJR7
                                )
    Debtor.                     )

## OPINION AND ORDER

I-State Court Trespass Lawsuit

Lisa Watson ("Watson") and the debtor, Nadine Evette Lanier ("Debtor"), are neighbors. Their homes are in a subdivision in St. Clair County, Alabama, and their residential lots share a common boundary line of approximately 200 feet. A creek or waterway that carries surface drainage runs behind both residences. The waterway flows first across the Debtor's lot and then continues across Watson's lot. The Debtor buried a 36-inch pipe in the waterway to carry the water across her lot. The pipe encroaches 7.16 feet beyond the property line before it empties into the open waterway that flows across Watson's lot. Apparently, the pipe increased the velocity of the water as it emptied onto Watson's property causing erosion and damaging her property.[1] The Debtor also erected a chain-link fence that encroached onto Watson's property. Watson successfully sued the Debtor in the Circuit Court of St. Clair County (the "Circuit Court") for trespass. The Circuit Court entered an Order dated June 14, 2018 (the "Circuit Court's Order" and the "Order") that awarded Watson money damages, attorney's fees, and injunctive relief.[2]

---

[1] This statement is an assumption on the court's part, not a finding, based on a review of the parties' submissions and the Circuit Court Order mentioned below.

[2] Circuit Court Case No. CV-2017-900101.00. A copy of the Circuit Court's Order was attached to Watson's memorandum filed in support of her motion seeking relief from the automatic

1

II-Chapter 7 Bankruptcy and Stay Relief Motion

On February 5, 2019, in an effort to discharge her liability to Watson, the Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code (11 U.S.C. § 101, *et seq.* and herein, the "Code").[3] Soon thereafter, Watson filed an adversary proceeding (AP Case No. 19-40008) claiming the damages and other relief awarded in the Circuit Court's Order should be excluded from the Debtor's discharge pursuant to Code §523(a)(6) because she willfully and maliciously injured Watson's property. The adversary proceeding is pending. Watson also filed a Motion for Relief from Automatic Stay (Doc. 38) asking permission to return to the Circuit Court where she intends to seek damages and other relief for the Debtor's alleged continuing, ongoing trespass, which Watson argued gives rise to postpetition claims that, regardless of the outcome of her § 523(a)(6) adversary proceeding, will not be discharged in the Debtor's bankruptcy case. Indeed, Code § 727(b) provides that "debts that arose *before* the date of the order for relief . . ." are subject to discharge (emphasis added).[4]

---

stay. (Doc. 55, Exhibit B). The Order was affirmed by the Alabama Court of Civil Appeals and is now final.

[3] It appears from her schedules that the Debtor was not in financial distress before she became liable to Watson for the trespass damages. In Part 2 of Schedule E/F—Nonpriority Unsecured Claims (Doc. 1, p. 23) the Debtor described Watson's claim as a disputed "money judgment for trespass to real property" in the amount $50,000. Schedule E/F also listed claims for a credit card in the amount of $4,483, attorney fees of $250—apparently incurred while defending Watson's suit— and a $20,000 student loan, which in all likelihood will not be discharged in the bankruptcy case. The Debtor also scheduled a home mortgage which she has reaffirmed.

[4] Prepetition claims determined to be non-dischargeable under Code § 523(a) are likewise not discharged under § 727(b).

2

The Debtor contends the stay should not be lifted and that the damages and injunctive relief awarded to Watson by the Circuit Court were for a permanent trespass, as opposed to a continuous trespass, and, therefore, the doctrines of claim preclusion and res judicata bar Watson from pursuing additional damages or other remedies arising from the Debtor's encroachment on Watson's property. The Debtor argued that this bankruptcy court can and should resolve the disputes between the parties, and there is otherwise no legitimate reason to send the parties back to the Circuit Court where the Debtor will incur additional attorney's fees she cannot afford.

This court held a hearing on Watson's stay relief motion and thereafter the parties submitted briefs containing their arguments and authorities (Docs. 54, 55). The court considered the arguments of counsel made at the hearing and in their written submissions, the pleadings and matters of record in the case, and considered the relevant statutory and case law, and concludes that Watson's motion is due to be granted in part and denied in part pending adjudication of her § 523(a)(6) adversary proceeding. However, as discussed below, she is not restrained by the stay from pursuing postpetition claims for any continuous trespass.

III-The Circuit Court's Order

The Circuit Court's Order found the Debtor "to be actively trespassing onto [Watson's] property," and that the "trespass include[d] a 36" water pipe, which encroaches 7.16 [feet ] onto [Watson's] property and a chain link fence, which also encroaches onto [Watson's] property."[5]

---

[5] The Order refers to a survey of Watson's lot, a copy of which was attached as an exhibit to her memorandum filed in support of her motion seeking stay relief. (Doc. 55-2.) The pipe's encroachment, as shown on the survey, is 7.16 feet, not the 7.16" (i.e., inches) stated in the Order. The court is confident the Order's use of the symbol for inches ( " ) rather than feet ( ′ ) was a typographical error.

The Debtor was required to remove the encroachments from Watson's property within sixty days. The Circuit Court also awarded Watson monetary damages of $32,418.77 and attorney's fees of $3,000.00.[6]

Paragraph 3 of the Order itemized the award of damages as follows:

3. The Plaintiff's Damages are found to be calculated at $32,418.77, which were testified to at trial and which include the following:

Landscaping
Install shrubs, ferns, and flowering evergreens in and around affected areas.
$2,956.24

Stone
Install a stone staircase leading down to the bridge, install several boulders on the sides for support. Install three terraces on both sides of reconstructed fountain area. Install several small retaining walls around the Banana Trees and existing shrubs near the house for added support. $8,985.45

Soil
Bring in 35 tons of topsoil, distribute and compact in areas affected by neighboring drainage issues. $1,672.11

Retaining Wall
Repair small retaining wall and damage caused to right of property[.]
$2,507.32

Sod
Install new sod in areas which have been impacted by neighboring draining issues, particularly on slopes running parallel to creek.
$2,498.67

Fountain
Remove existing stone in the water thoroughfare. Excavate as needed to install a collection basin and install a rubber membrane for waterproofing. This will span up the sides 10 feet from the center of the water thoroughfare to ensure sufficient water retention and prevention of erosion during heavy water flow caused by drainage issues. We will connect to the existing 36" pipe and bring the line down to the bridge. Once the line is installed we

---

[6]The Order did not disclose the basis for awarding attorney's fees to Watson. There was no contract between the parties and there is no Alabama statute that awards attorney's fees to a prevailing party in a trespass action. Nonetheless, there may be a valid explanation for the allowance of attorney's fees of which this court is unaware.

will begin resetting the existing stones for the river bottom covering the new pipe. [$]13,798.98

In paragraph 4 the Debtor was ordered "to remove the said Chain Link Fence and . . . to Remove the said 36["] water pipe, which encroaches onto [Watson's] Property within sixty (60) days of this Order."[7] And paragraph 5 of the Circuit Court's Order stated that:

> 5. Said removal [of the pipe and fence] shall be paid for entirely by the [Debtor] and shall be done in a manner that insures that water from the [Debtor's] property does not flow onto [Watson's] property and in a manner that does not harm [Watson's] property in any way.

Read literally, paragraph 5 would require the Debtor to remove the encroachments, including the 7.16 feet at the end of the pipe "in a manner that insures that water does not flow onto [Watson's] property . . . ." However, before the pipe was installed, water flowed across the Debtor's property onto Watson's property. It was the installation of the pipe that caused the water to damage Watson's property. Thus, removing the entire pipe or just the encroaching 7.16 feet won't stop the water from flowing from the Debtor's property onto Watson's property

The final itemization of damages in paragraph 3 of the Order, under the caption "Fountain," anticipated Watson would "connect to the *existing* 36" pipe and bring the line down to the bridge [and] [o]nce the line is installed we [i.e., Watson] will begin resetting the existing stones for the river bottom covering the *new* pipe" (emphasis added). If the entire length of pipe buried beneath the Debtor's property were removed, there would be no *existing* pipe left to which Watson's *new* pipe could connect. And paragraph 6 provides that "[The Debtor] shall insure that no part of said 36[inch] water pipe and fence will be located on the property of [Watson] after removal."[8] If the

---

[7] In paragraph 4, the pipe was erroneously described as being a "36′ [i.e., foot] water pipe." The survey as well as the parties refer to the pipe as being 36 inches, which is unquestionably accurate.

[8] Paragraph 6 again erroneously described the pipe as being "36′ [i.e., foot] water pipe."

5

entire pipe, not just the encroaching 7.16 feet, were to be removed, paragraph 6 would have been unnecessary. Removing the entire pipe would necessarily leave no part of the pipe located on Watson's property after removal.

Thus, when paragraph 5 is considered within the context of the entire Order, it becomes obvious that the "removal" ordered in that paragraph is limited to the encroaching 7.16 feet of pipe and the fence, not the entire length of pipe that is buried across the Debtor's property. To harmonize paragraph 5 with the rest of the Order—and perhaps correct a scrivener's error that used a double negative—it would read as follows:

> 5. Said removal [of the pipe and fence] shall be paid for entirely by the [Debtor] and shall be done in a manner that insures that water from the [Debtor's] property does not flow onto [Watson's] property [ ] in a manner that does [ ] harm [to] [Watson's] property in any way.

IV-Permanent or Continuous Trespass

A critical question is whether the redress awarded to Watson in her Circuit Court lawsuit was for a permanent trespass or a continuous trespass. "If the injury is permanent, damages must be recovered for all time past, present and future. The measure of damages means the difference in the fair market value of the property before and after the trespass, based on the plaintiff's use of the property or adaptability of the property to a particular use prior to the trespass." *Borland v. Sanders Lead Co., Inc.*, 369 So. 2d 523, 531 (Ala. 1979). If the Circuit Court's award of damages and injunctive relief to Watson was for a permanent trespass, further claims would be barred by the doctrines of claim preclusion and res judicata. As the court stated in *Devenish v. Phillips*, 743 So. 2d 492, 494-95 (Ala. Civ. App. 1999):

> Devenish's second lawsuit is a result of his not asking for appropriate relief or for not suing for enough money the first time, not because of some new injury. The facts of this case show a single encroachment resulting in harm, not a continuous

> wrong involving new harm to the property on each occasion. Devenish had a full
> and fair opportunity to be heard on his trespass claim when he filed his first lawsuit
> in February 1996. He is now barred by the doctrine of res judicata from relitigating
> his claims.

On the other hand, if the Order compensated Watson for a continuous trespass, she would be entitled to damages for additional harm, if any, caused by the Debtor's ongoing trespass occurring after the Circuit Court trial. "Damages for continuous trespass are limited to those which have occurred before and up to the trial. Subsequent damages flowing from a continuance of the trespass give a new cause of action." Ala. Code § 6-5-217 (1975). "Any damages for future loss must be recovered in a later action if and when a subsequent trespass occurs." *Borland,* 369 So. 2d at 531. "And where the trespass is a continuing one, and not of that class of permanent appropriations, to be assessed for all time at once, there may be successive actions for each continuance of the trespass." *Louisville & Nashville R.R. Co. v. Higginbotham*, 44 So. 872, 875 (Ala. 1907).

The injunctive relief awarded by the Circuit Court requiring the removal of the encroachments from Watson's property supports a finding that the trespass was considered by that court as being continuous. "[O]ne remedy for a continuing trespass is a permanent injunction, which . . . could provide a removal of the encroachment." *Devenish,* 743 So. 2d at 494. "A structure maintained on another's property is a continuous trespass." *Alabama Power Co. v. Gielle*, 373 So. 2d 851, 854 (Ala. Civ. App. 1979) (power pole); *see also Gaitlin v. Joiner*, 31 So. 3d 126 (Ala. Civ. App. 2009) (boat dock and boat ramp). Clearly, the protruding 7.16 feet of pipe and fence encroaching on Watson's property are structures maintained on another's property and under Alabama law their ongoing presence on Watson's property constitutes a continuous trespass. Indeed, the Circuit Court's Order found that the Debtor was "actively trespassing" and ordered the removal of the encroachments. And the money damages—apparently based on evidence provided

by Watson[9]—covered both the cost of restoration[10] as well as the expense of preparing Watson's property for installation of a new pipe that would connect to the Debtor's existing pipe at the property line.

A trespass that may be abated—a term more often applied in the context of a nuisance[11]—is generally not considered permanent.[12] But when abatement is not possible or practical—the

---

[9] As mentioned, paragraph 3 of the Circuit Court's Order itemized the damages awarded to Watson. During the Circuit Court trial, Watson—not the Debtor--had the burden to prove damages. The introductory sentence to the itemization stated that the damages "were testified to at trial" which indicated that the Circuit Court calculated damages based on the testimony provided by Watson or her witness.

[10] Costs of restoration, provided they are less than the diminution in the value of the property, are recoverable as damages for a continuous trespass. *Borland*, 369 So. 2d at 531. The damages awarded under the Circuit Court's Order were not calculated using the formula prescribed by Alabama courts to compensate for permanent trespass—the difference in the before and after market values of the affected property. *Devenish*, 743 So. 2d at 494.

[11] The Alabama Supreme Court discussed the differences and similarities between the torts of nuisance and trespass in *Borland v. Sanders Lead Co.*, 369 So. 2d 523, 529 (1979). The court explained that "the remedies of trespass and nuisance are not necessarily mutually exclusive . . ." The court further explained that "conduct which rises to the level of trespass to land, generally speaking, would support a nuisance action; the converse, however, is not necessarily true. " *Id.* at 530 n. 1. "If the intrusion interferes with the right to exclusive possession of property, the law of trespass applies. If the intrusion is to the interest in use and enjoyment of property, the law of nuisance applies." *Id.* at 530. According to the *Borland* court, examples of nuisances are barking dogs, unruly neighbors, smoke, fumes and obnoxious odors, where there is no physical damage to the plaintiff's property. Conduct that interferes with the plaintiff's exclusive possessory interest in his property by causing substantial damage thereto, constitutes a trespass but may also be considered a nuisance. *Id.*

[12] It appears that a plaintiff's choice of remedy may preclude him from recovering future damages for what otherwise would be considered a continuing trespass. In *Devenish v. Phillips*, 743 So.2d 492 (Ala. Civ. App. 1999), the plaintiff, in an earlier trespass lawsuit, recovered damages based on the underpinning of a retaining wall having been constructed on his property. One would assume the encroaching underpinning would have constituted a classic continuous trespass because it was an unauthorized structure maintained on another's property. The wall channeled water onto the plaintiff's property, and he sued again; however, the appellate court held that the second suit was barred by the doctrine of res judicata. The court stated that the damages awarded in the first suit were for a permanent change to the land, and that the plaintiff had failed to seek an injunction requiring the wall's removal and did not demand sufficient damages in the first suit to cover his loss. Although the encroachment of the wall's underpinning would have

costs exceed the diminution in value—the trespass or nuisance is considered permanent and, as mentioned, damages are measured by the resulting decrease in the property's value. *Harris v. Town of Tarrant City*, 130 So. 83 (Ala. 1930). In this case, the new pipe was intended to keep the water from further damaging Watson's property and thereby abate the problem, whether that problem is called a trespass or nuisance.

Accordingly, the uncontroverted facts, including the findings in the Circuit Court's Order and the relief awarded to Watson thereby, confirm that the Debtor's trespass was and is a continuing one that entitles Watson to "a new [postpetition] cause of action." Ala. Code § 6-5-217 (1975).

V- Claims Subject to the Stay

In light of the Debtor's bankruptcy case, it is necessary to separate the consequences of the Debtor's trespass into three categories: First, with the exception of the injunctive relief requiring removal of the encroachments, enforcement of the Circuit Court's Order should continue to be stayed under Code § 362(a)(2), which prohibits "the enforcement . . . of a judgment obtained before the commencement of the case . . . ." The Debtor's liability under that Order may ultimately be discharged depending on the outcome of Watson's § 523(a)(6) adversary proceeding.

While the court and the parties have expended much time and effort on Watson's motion for stay relief, the case has moved forward and has now been discharged as of October 16, 2019 (the time having been extended to allow a reaffirmation agreement, which has now been filed).

---

otherwise supported a classic continuous trespass claim, because the plaintiff chose, perhaps unwittingly, in his first lawsuit to seek damages based on the permanent harm caused by the wall and did not seek an injunction requiring its removal, he was barred from asserting claims for the subsequent—continuous—harm caused by water channeled onto his property.

9

The court cautions the parties that while the stay as to the Debtor terminates upon entry of the discharge according to Code § 362(c)(2), the stay continues in place as to property of the estate until such property is no longer property of the estate according to Code § 362(c)(1). In this case, with no formal abandonment by the trustee, estate property will continue as such until the case is closed, at which time administered assets that the trustee chooses not to pursue will be abandoned back to the Debtor, according to Code § 544. Therefore, while the stay will lift as to the Debtor upon entry of discharge, the stay will remain in effect as to estate property unless and until the property is either abandoned or the case is closed with the property having been administered. The case will not be closed until Watson's § 523(a)(6) adversary proceeding is concluded. The court reminds the parties that while the stay may not protect the Debtor post-discharge, the discharge injunction will immediately take its place. The court cautions the parties to maintain the status quo as to prepetition claims pending the outcome of the adversary proceeding, which is set for trial in December 2019.

Nonetheless, the ongoing encroachment of the 7.16 feet of pipe and the fence constitute a continuing trespass, and give Watson a valid postpetition claim, unrestricted by the stay or the discharge injunction to follow. Although Watson may again seek injunctive relief based on the postpetition, continuing trespass, it would be a waste of judicial resources to require Watson to file another lawsuit seeking the same injunctive relief awarded to her under paragraph 4 of the Circuit Court's Order, especially when her entitlement to such relief is so evident.[13]

---

[13] Paragraph 4 ordered the Debtor to remove the encroaching pipe and chain link fence from Watson's property within sixty days. Without stay relief, the enforcement of paragraph 4 would be prohibited. But because the encroachments constitute a continuous trespass and give rise to a postpetition claim which will entitle Watson to the same injunctive relief for removal, it is senseless to require her to pursue the same relief in another lawsuit when the outcome is certain.

Second, inasmuch as the trespass is continuing, Watson was in all likelihood entitled to claim additional damages that occurred after the Circuit Court trial but before the Debtor filed her bankruptcy petition. Watson's pursuit of these second category of damages will continue to be stayed as to any recovery from property of the estate under Code § 362(a) even after entry of the discharge. And whether this second category of damages will be discharged as to the Debtor, like the first category, will depend on the outcome of Watson's adversary proceeding.

Again, recognizing the trespass is continuing, the third category of damages, if any, to which Watson may be entitled are those that accrued after the Debtor filed her bankruptcy case. Remember, Watson is not entitled to recover damages, whether for restoration or abatement, in a postpetition action for the harm to her property that was awarded in the Circuit Court's Order or that occurred in the hiatus between the Circuit Court trial and the bankruptcy petition date; those first and second category of damages will either be discharged or declared nondischargeable in Watson's adversary proceeding, but unless and until the latter occurs, and so long as the bankruptcy case remains open, an attempt to collect those damages from property of the estate will constitute a stay violation. From what this bankruptcy court has learned thus far from the record, separating prepetition and postpetition damages will be a difficult task because it appears most of the damage had already occurred when the Debtor filed her bankruptcy case.

VI-Order

Accordingly, it is hereby ORDERED that pursuant to Code § 362(d), Watson's motion (Doc. 38) to terminate the stay is GRANTED IN PART, as to both the Debtor and property of the estate, but only to the extent necessary for the enforcement of the injunctive relief ordered in paragraph 4 of the Circuit Court's Order that required removal of the encroachments within sixty

(60) days and provided, further, that all other relief sought in Watson's motion (Doc. 38) is DENIED.

It is further ORDERED that should Watson elect to commence an action against the Debtor for *additional* harm, if any, to Watson's property that occurred postpetition, such action shall NOT attempt to enforce or collect against estate property the awards and relief provided in the Circuit Court's Order beyond the limited stay relief granted above.[14]

So done and ordered this 18th day of October 2019.

/s/ James J. Robinson
JAMES J. ROBINSON
CHIEF U.S. BANKRUPTY JUDGE

---

[14] The parties are reminded that they are neighbors which makes settlement all the more appropriate and compelling. Thus, they are urged to consider mediation.